MOORE, Judge,
dissenting.
J.M. (“the father”) appeals from a judgment terminating his parental rights to S.M. (“the child”). From my review of the record, it appears that the Madison Juvenile Court terminated the parental rights of the father solely because the father cannot meet the specialized medical needs of the child, who was born with numerous birth defects, despite reasonable efforts by the Madison County Department of Human Resources (“DHR”) to assist the father in that regard. Undoubtedly, a parent owes a responsibility to provide medical care for his or her child, *591 see Ex parte University of South Alabama, 541 So.2d 5B5 (Ala.1989); and Osborn v. Weatherford, 27 Ala.App. 258, 170 So. 95 (1936), and, if a parent shows an irremediable inability to provide such medical care, a juvenile court would have grounds to terminate that parent’s rights to the child under § 12-15-319, Ala.Code 1975.
However, a juvenile court can terminate parental rights only when it has exhausted all other viable alternatives. Ex parte Beasley, 564 So.2d 950, 954 (Ala.1990). The evidence in the record reveals that the child is currently receiving adequate medical care through a foster-care arrangement, pursuant to which .the foster mother, S.A. (“the foster mother”), a former pediatric nurse, attends to the child. The foster mother assures that the child is transported to all of his medical appointments and, with assistance from her family, provides all the nonspecialized care the child needs on a daily basis.[5] The foster mother testified that the child would soon be undergoing state-sponsored surgical procedures designed to improve his physical condition and to lessen his future medical needs. Thus, at the time of the trial, the state was adequately addressing the one area of parental deficiency for which the juvenile court terminated the father’s parental rights.
Although this court has noted that, in some circumstances, it is not a viable alternative for a child to remain indefinitely in foster care, see, e.g., R.L.B. v. Morgan Cnty. Dep’t of Human Res., 805 So.2d 721, 725 (Ala.Civ.App.2001), our supreme court has more recently held that a juvenile court should maintain foster care or other third-party custodial arrangements without terminating parental rights when a child shares a beneficial emotional bond with a parent and the custodial arrangement ameliorates any threat of harm from the parent. See Ex parte A.S., 73 So.3d 1223 (Ala.2011); see also Ex parte T.V., 971 So.2d 1 (Ala.2007) (reversing judgment terminating parental rights in order to enable rehabilitated mother to forge bond with child). Our supreme court has apparently recognized that maintaining the status quo in those situations would serve the best interests of the child more than termination of the parent’s parental rights and the corresponding lo'ss of association between the parent and the child.
In this cáse, the record clearly shows that the father loves the child, that the father has maintained consistent visits with the child and has developed a bond with the child, and that the child benefits from that emotional relationship. The father has never harmed the child and has not exhibited any threat of harm to the child during visits; rather, he has, at all times, displayed concern and normal parental behavior. The father is currently raising the child’s two older siblings, both of whom have special needs, without incident and with reports from others, including workers with DHR, that, despite some failings, he is a good father. The record contains no evidence indicating that the father abuses drugs or alcohol, engages in criminal behavior, commits domestic violence, or otherwise conducts himself in a manner that would endanger the morals of the child. Absent the unfortunate condition of the child, the father and the child would be united today without the need for DHR’s involvement or the child’s placement in foster care.
Our supreme court has admonished that termination of parental rights is a drastic remedy reserved for the most egregious of circumstances. Ex parte Beasley, 564 So.2d at 952. Tragic circumstances such *592 as these, in which an otherwise qualified parent simply lacks the ability to meet the medical needs of his child, do not warrant the most extreme civil sanction known to Alabama law. See M.E. v. Shelby Cnty. Dep’t of Human Res., 972 So.2d 89 (Ala.Civ.App.2007) (plurality opinion) (characterizing termination of parental rights as “civil death penalty”) (citing Tammila G. v. Nevada, 122 Nev. 1418, 148 P.3d 759 (2006); In re K.A.W., 138 S.W.3d 1 (Mo.2004); and Stann v. Levine, 180 N.C.App. 1, 636 S.E.2d 214 (2006)). Rather, they require the law to strive to prevent those circumstances from causing an even more tragic outcome for the child — the loss of his biological family.
The current foster-care arrangement adequately protects the child while preserving the beneficial aspects of the child’s relationship with the father. The juvenile 'court did not need to terminate the father’s parental rights in order to assure that the child continued to receive adequate medical care. The judgment of the juvenile court is due to be reversed, and the cause remanded with instructions for the juvenile court to maintain the current foster-care and visitation arrangement. Because a majority of this court decides otherwise, I respectfully dissent.

. The record contains no evidence indicating that the foster-care arrangement would cease if the father’s parental rights were not terminated.