130 Nev., Advance Opinion 91

## IN THE SUPREME COURT OF THE STATE OF NEVADA

IN THE MATTER OF THE PARENTAL
RIGHTS AS TO A.L. AND C.B.,
MINORS.

KEAUNDRA D.,
Appellant,
vs.
CLARK COUNTY DEPARTMENT OF
FAMILY SERVICES,
Respondent.

No. 63311



FILED

NOV 13 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order terminating appellant's parental rights as to the minor children. Eighth Judicial District Court, Family Court Division, Clark County; Robert Teuton, Judge.

*Reversed and remanded.*

David M. Schieck, Special Public Defender, and Melinda E. Simpkins and Deanna M. Molinar, Deputy Special Public Defenders, Clark County, for Appellant.

Catherine Cortez Masto, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Ronald L. Cordes, Chief Deputy District Attorney, Clark County, for Respondent.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, PARRAGUIRRE, J.:

In this appeal from a district court order terminating parental rights, we are asked to decide whether the district court erred in relying

3/12/15: Corrected per letter to publishers. CT

14-37354

on a juvenile court's determination that a minor child's injury was not accidental, but rather was caused by appellant, the child's birth mother. We conclude that respondent confessed error on this issue. We therefore reverse and remand for a new trial as to appellant's parental rights.

## FACTS

Appellant Keaundra D. is the mother of A.L. and C.B., the minor children who are the subject of this proceeding. In April 2010, respondent, the Clark County Department of Family Services (DFS), received an anonymous call through its child abuse hotline alleging that the children's safety was at risk because the parents used illegal drugs, domestic violence was ongoing, and C.B.'s face had recently been burned. At the time, A.L. was six years old and C.B. was one year old.

During an interview with a DFS investigator, Keaundra stated that she was the only adult at home when C.B. was burned. According to Keaundra's trial testimony, A.L. and C.B. were in the master bedroom while she was preparing for work in the attached bathroom. She had recently ironed her clothes and had placed the iron on her dresser. She heard the iron fall and came out to investigate. A.L. told her that C.B. had tried to kiss the iron.

Following this initial contact with DFS, Keaundra moved her family to Louisiana, where her stepfather was stationed with the U.S. Air Force. DFS characterized the move as a flight in an attempt to hide the children from DFS. Upon learning that Keaundra had moved to Louisiana, DFS sought help from U.S. Air Force authorities to gain protective custody of the children. The children were removed from Keaundra, and C.B. was taken to see Dr. Neuman, a physician in Louisiana.

In May 2010, DFS filed a petition for protective custody of C.B. and A.L. under NRS Chapter 432B, alleging that Keaundra had either physically abused or negligently supervised C.B. At a subsequent adjudicatory hearing, the hearing master took testimony from Dr. Mehta, a medical examiner who had reviewed photographs of C.B.'s injuries. Dr. Mehta gave her opinion that the shape of the injury was inconsistent with an accident and that the iron was deliberately held to C.B.'s face. Keaundra offered a report by C.B.'s treating physician, Dr. Neuman, to rebut Dr. Mehta's testimony. The hearing master excluded the report on the ground that the report was not a certified copy. The hearing master found that Keaundra physically abused C.B. and recommended sustaining the abuse and neglect petition on that ground; the allegations concerning drug use and domestic violence were dropped. The juvenile court affirmed the hearing master's recommendation and concluded that the injury was nonaccidental.

In light of these findings, Keaundra received a case plan that required her to maintain stable housing and income, keep in contact with DFS, and complete parenting classes. She was also required to complete a physical abuse assessment and "be able to articulate in dialogue with the Specialist and therapist(s) the sequence of events which result[ed] in physical abuse, as sustained by the Court, and how he/she will be able to ensure that no future physical abuse to [C.B.] occurs." One month after giving Keaundra the case plan, DFS recommended termination of parental rights as the goal for the children. DFS followed this recommendation with a petition to terminate Keaundra's parental rights as to C.B. and A.L.

At her six-month review, DFS reported that Keaundra had completed her parenting classes, maintained housing, held regular jobs,

and completed both her assessment and therapy. At that point, the children had been placed with their maternal grandmother in Louisiana, where Keaundra was also living. DFS stated that it was satisfied with Keaundra's progress but nevertheless maintained its recommendation to terminate her parental rights because she had not admitted that she abused C.B., and the case plan required such an admission. DFS later stated at trial that, with such an admission, it would not have sought termination of parental rights.

At the next six-month review, DFS again noted that Keaundra had completed her case plan in all other regards and that she acknowledged that negligence and improper supervision caused C.B.'s injury. Again, DFS maintained its recommendation to terminate parental rights due to Keaundra's refusal to admit that she held the iron to C.B.'s face.

In the meantime, Keaundra moved to South Carolina and was referred to a new therapist, who was in regular contact with a DFS caseworker. At the parental termination trial, the new therapist testified that therapy resulted in a marked change in Keaundra's behavior and demeanor. The therapist saw no signs that she would expect to see in an abusive parent. She noted that despite signs of depression and anxiety at the start of therapy, Keaundra's demeanor had substantially changed over the course of treatment and her risk to reoffend was low.

Following the trial, the district court issued a decision terminating Keaundra's parental rights as to C.B. and A.L. The district court relied on the hearing master's findings, as affirmed by the juvenile court, that Keaundra was at fault for C.B.'s injuries and that his injuries were not accidental. Because Keaundra was unable to remedy the circumstances, conduct, or conditions leading to C.B.'s removal, the

district court terminated her parental rights based on token efforts, failure of parental adjustment, and unfitness. The district court further found that termination was in the children's best interests. Keaundra now brings this appeal.

## DISCUSSION

On appeal, Keaundra argues that the hearing master erred in excluding evidence proffered to rebut a statutory presumption and that the district court improperly relied on the hearing master's resulting findings in terminating her parental rights.[1]

"The purpose of Nevada's termination statute is not to punish parents, but to protect the welfare of children." *In re Termination of Parental Rights as to N.J.*, 116 Nev. 790, 801, 8 P.3d 126, 133 (2000). "A party petitioning to terminate parental rights must establish by clear and convincing evidence that (1) termination is in the child's best interest, and (2) parental fault exists." *In re Parental Rights as to A.J.G.*, 122 Nev. 1418, 1423, 148 P.3d 759, 762 (2006). Because the termination of parental rights "is 'an exercise of awesome power' that is 'tantamount to imposition of a civil death penalty,'" a district court's order terminating parental rights is subject to close scrutiny. *Id.* at 1423, 148 P.3d at 763 (quoting *In re N.J.*, 116 Nev. at 795, 8 P.3d at 129). Termination of parental rights must be based on clear and convincing evidence. *In re N.J.*, 116 Nev. at 795, 8 P.3d at 129. This court reviews the district court's findings of fact

---

[1]Keaundra also argues that the district court's sole basis for terminating her parental rights was her refusal to admit intentionally harming her child and that this requirement violated her Fifth Amendment right against self-incrimination. We do not reach this issue because it is not necessary to dispose of this matter.

for substantial evidence. *Id.* We review questions of law de novo. *Awada v. Shuffle Master, Inc.*, 123 Nev. 613, 618, 173 P.3d 707, 711 (2007).

NRS 128.105 provides that a district court may terminate parental rights if it finds that "[t]he best interests of the child would be served by the termination of parental rights" and the parent is unfit, failed to adjust, or only made token efforts to "support or communicate with the child," "prevent neglect of the child," "avoid being an unfit parent," or "eliminate the risk of serious physical, mental or emotional injury to the child." The district court found that DFS established presumptions of token efforts under NRS 128.109(1)(a) and that termination of parental rights was in the best interests of the children under NRS 128.109(2). To rebut NRS 128.109's presumptions, the parent must establish by a preponderance of the evidence that the alleged parental fault does not exist and termination is not in the children's best interests. *In re Parental Rights as to J.D.N.*, 128 Nev. ___, ___, 283 P.3d 842, 849 (2012). According to the district court, Keaundra did not rebut these presumptions. The district court also found clear and convincing evidence of unfitness and failure of parental adjustment. Each of these findings was ultimately derived from the district court's reliance on the hearing master's finding of abuse.

According to NRS 432B.450, a presumption that a child is in need of protection is raised when an expert testifies in a civil proceeding that an injury to a child would not have occurred absent "negligence or a deliberate but unreasonable act or failure to act by the person responsible for the welfare of the child." During the NRS 432B proceedings, Keaundra attempted to rebut the presumption raised by Dr. Mehta's report (concluding that the iron burn was nonaccidental) by introducing the

SUPREME COURT
OF
NEVADA

(O) 1947A

report of Dr. Neuman, who had personally examined C.B. in Louisiana. The hearing master barred admission of this report on the ground that it was not a certified copy.

Keaundra asserts that Dr. Neuman's report was improperly excluded in the juvenile court proceedings, leading the district court to find abuse without hearing material rebuttal evidence. DFS does not address Keaundra's argument on appeal. We conclude, therefore, that DFS has confessed error on this issue. NRAP 31(d); *see also Bates v. Chronister*, 100 Nev. 675, 681-82, 691 P.2d 865, 870 (1984) (concluding that respondent confessed error by failing to respond to appellant's argument).

The district court's findings of parental fault—specifically, failure of parental adjustment, unfitness, and token efforts—were all premised on Keaundra's failure to comply with a portion of her case plan requiring her to admit to intentionally abusing her child. Since the finding of intentional abuse was based on a concededly improper failure to admit evidence rebutting a statutory presumption, a new trial is required to determine Keaundra's parental rights. *See In re N.J.*, 116 Nev. at 804, 8 P.3d at 135 (concluding the district court's refusal to admit evidence rebutting a statutory presumption constituted grounds for a new trial); *see generally In re A.B.*, 128 Nev. ___, ___, 291 P.3d 122, 127 (2012) (holding that a district court may review a hearing master's findings de novo or "may rely on the master's findings when the findings are 'supported by credible evidence and [are] not, therefore, clearly erroneous'" (alteration in original) (quoting *Wenger v. Wenger*, 402 A.2d 94, 97 (Md. Ct. Spec. App. 1979))).

Accordingly, we reverse the district court's termination order as to Keaundra, and we remand this matter for a new trial.[2]

_____, J.
Parraguirre

We concur:

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

---

[2]The district court's order also terminated Christopher B.'s parental rights. He has not filed an appeal in this matter; therefore, our consideration of the issues in this case is limited solely to the termination of Keaundra's parental rights.