# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| IN THE MATTER OF THE PARENTAL RIGHTS AS TO K.M.Z., A MINOR. | No. 73910 |
| JESSICA B.; AND BRANDON Z., Appellants, vs. STATE OF NEVADA DEPARTMENT OF FAMILY SERVICES, Respondent. | **FILED** DEC 27 2018 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY S. Young DEPUTY CLERK |

## ORDER OF AFFIRMANCE

This is an appeal from a district court order terminating appellants' parental rights. Eighth Judicial District Court, Family Court Division, Clark County; Robert Teuton, Judge.

### FACTS

K.M.Z. was born on August 5, 2015, and on August 10, the Clark County Department of Family Services (DFS) was notified that K.M.Z.'s urine tested positive for opiates. K.M.Z was placed in protective custody and her parents, Jessica B. and Brandon Z. pleaded no contest to an amended abuse/neglect petition setting forth their inability to care for the child due to their substance abuse and making her a ward of the court. Case plans for both parents were filed with the district court, and required them to make use of drug treatment resources to control their addictions and demonstrate an ability to support and care for K.M.Z.

18-910654

Jessica B. was referred to a drug treatment program. Her assessment resulted in a recommendation for inpatient treatment for substance abuse at the end of 2015. Jessica B. did not enter inpatient treatment at that time, and subsequently tested positive for methamphetamines a number of times between January and October 2016. In December 2016, she was arrested for possession of narcotics, but the State deferred prosecution pending her completion of 100 hours of community service, completion of a drug treatment program, and a clean drug test result in August 2017.

After DFS established a case plan for Brandon Z., he was arrested on two counts of possession of narcotics in December 2015 and remained incarcerated until March 2016. Later that month, he was arrested again on burglary-related charges and placed under house arrest. On April 28, 2016, he tested positive for amphetamines and methamphetamines. In August 2016, Brandon Z. reported that he had not sought treatment for substance abuse to that point and DFS reported that it had been unable to administer monthly drug tests because of his inconsistent communication with DFS.

At a 12-month review hearing on August 15, 2016, DFS recommended changing the goal of K.M.Z.'s permanency plan from reunification with her parents to termination of parental rights and adoption with a concurrent goal of reunification. DFS reported that it had continued to engage the parents but they failed to follow through with accessing resources to assist with their substance abuse issues, which represented the major safety threat preventing K.M.Z.'s return to their care, and they had not met standards for providing a safe and stable home. DFS subsequently filed a petition to terminate the parental rights of Jessica

B. and Brandon Z. on September 20, 2016, and the district court appointed counsel for both parents. At the time of trial in June 2017, both parents were participating in inpatient drug treatment programs, and were reported to be making satisfactory progress. Jessica B. testified that she last used methamphetamine on February 11, 2017 and entered inpatient treatment for substance abuse on February 12, 2017. Brandon Z. testified that he stopped using heroin in October 20, 2016, which is when he tested positive for the drug, resulting in his arrested and incarceration for parole violation. His incarceration ended March 23, 2017, at which point his probation was reinstated upon being transferred to an inpatient drug treatment facility.

Following trial, the district court entered an order terminating appellants' parental rights, finding that because K.M.Z. had been placed outside of their custody for 22 consecutive months, a statutory presumption of token efforts supporting termination applied. The district court also found a number of other grounds of parental fault and that termination of parental rights was in the child's best interests. The court found that K.M.Z had been placed with an adoptive resource foster family nine months before trial and that family provided a loving and stable environment. The district court found clear and convincing evidence, in addition to the statutory presumption, that the parents had engaged in token efforts to address their unfitness, and although they maintained contact with the child and made recent progress in drug treatment, they failed to rebut the statutory presumption. Jessica B. and Brandon Z. independently appeal the decision.

## DISCUSSION

This court "closely scrutinize[s] whether the district court properly . . . terminated the parental rights at issue," but will not substitute its judgment for that of the district court if supported by substantial evidence. *Matter of Parental Rights as to A.J.G.*, 122 Nev. 1418, 1423, 148 P.3d 759, 762-63 (2006) (quoting *In re Parental Rights as to N.J.*, 116 Nev. 790, 795, 8 P.3d 126, 129 (2000)). The primary consideration in determining whether to terminate an individual's parental rights is the best interests of the child. NRS 128.105(1). To terminate an individual's parental rights, the district court must find by clear and convincing evidence that (1) the best interests of the child are served by terminating parental rights and (2) at least one ground of parental fault exists. *Id.*

*The termination of parental rights was in the best interests of the child*

Appellants argue that they rebutted the statutory presumption that termination of their parental rights was in the child's best interests because they demonstrated that they each formed parental relationships with the child, and because it would best serve her interests to maintain relationships with her biological family. We conclude that substantial evidence supported the district court's conclusion that the termination of parental rights was in the best interests of the child.

To determine the best interests of the child, the court looks to the child's physical, mental, and emotional needs. *In re Parental Rights as to N.J.*, 125 Nev. 835, 843, 221 P.3d 1255, 1261 (2009). Termination of parental rights is presumed to be in the best interests of the child if the child has been placed outside of his or her home for 14 of any consecutive 20 months. NRS 128.109(2). While the best interests of the child and parental fault are independent elements, parental fault is an indispensable

consideration in determining the best interests of the child. *Matter of Parental Rights as to K.D.L.*, 118 Nev. 737, 744, 58 P.3d 181, 186 (2002). Where the child has been removed from the custody of the parents and placed in foster care, the district court must consider the factors set forth in NRS 128.107 and NRS 128.108 in evaluating the best interests of the child. *See Matter of S.L.*, 134 Nev., Adv. Op. 59, 422 P.3d 1253, 1259 (2018).

Here, the district court found, and the record supports, that K.M.Z has never been in appellants' physical custody other than the few days she was in neonatal intensive care unit immediately following her birth in August 2015. She has lived continuously in foster care since that time, and was placed in an adoptive placement foster home roughly nine months before trial. Consequently, the district court correctly applied the presumption that termination of parental rights is in K.M.Z.'s best interests, NRS 128.109(2), and considered the factors enumerated in NRS 127.107 and NRS 128.108 in determining whether appellants' parental rights should be terminated.

In considering the statutory factors, district court found, and the record supports, that K.M.Z. has lived with her adoptive placement foster family for nearly half her life, and that family provides a stable, caring environment in which she is thriving and could continue to grow. *See* NRS 128.108 (enumerating factors to be considered when a child is placed in an adoptive foster home, including the child's emotional ties to biological and foster parents, the relative capacities to materially and emotionally care for the child, and the length of time the child has resided in a stable foster home). The record also supports the court's findings that although appellants had roughly a year-and-a-half to complete their case plans, they had made only recent progress and were not in a present position to provide

for the child's emotional and material needs or provide a stable and safe home. Accordingly, we conclude that substantial evidence supports the district court's findings that termination of appellants' parental rights is in the child's best interest. *See In re Parental Rights as to N.J.*, 116 Nev. at 800, 8 P.3d at 132-33 (observing that under NRS 128.005, the child's continuing need for "proper physical, mental and emotional growth and development" are decisive considerations in determining the child's best interest in termination of parental rights proceedings).

*The district court's finding of parental fault through token efforts is supported by substantial evidence*

In addressing parental fault, the district court found, and the record supports, that appellants failed to rebut NRS 128.109(1)(a)'s presumption of parental fault based on token efforts, as they were offered services to facilitate reunification but failed to substantially comply with their case plans at the time of trial, 22 months after the child's removal. In particular the record supports the district court's findings of token efforts in that (1) there was no evidence that appellants contributed financially to the support or well-being of the child; (2) Jessica B. did not meaningfully engage in services until after the termination of parental rights' trial date was set, and, in the prior 17 months, she was dilatory in attending treatment sessions, asserting that she could kick illicit drug use on her own, and in submitting to drug tests; and (3) Brandon Z. did not begin to engage in services until 19 months after the child's removal, after he was arrested and incarcerated for having a positive drug test in violation of probation and then placed in residential treatment following his release from jail.[1]

_____

[1]To the extent that Brandon Z. is arguing that DFS failed to provide alternative drug treatment resources to him, evidence of failure to provide

*See* NRS 108.107 (listing specific factors the court must consider when the child is not in the parents' physical custody, including services offered to facilitate reunification, the child's physical, mental, and emotional needs, the parents' efforts to adjust their circumstances, maintenance of regular visitation with the child, and whether additional services would be likely to bring about lasting parental adjustment to enable reunification within a predictable period of time).

Although appellants presented evidence that they maintained parental bonds with the child through regular contact and were making progress in their drug treatment programs at the time of trial, the district court found that their future ability to provide the child with a stable home was speculative, as they were both in residential treatment programs and had not yet sought or obtained verified employment or demonstrated that they could provide suitable housing. The court further found that even assuming appellants would address housing and income concerns in the future, their successes in residential treatment were insufficient to overcome the presumption. In that regard, the court also found speculative their abilities to provide a safe and stable home in light of their history of controlled substances abuse and significant delays in seeking treatment and legal troubles in the interim and the commitment to intensive outpatient treatment and participation in ongoing services that would be

---

services cannot be used to overcome the presumption of parental unfitness that arises when the child has resided outside the home for 14 of any 20 consecutive months or when the parent does not substantially comply with the terms or conditions of a reunification plan within six months. *See* NRS 128.109(3).

required to maintain sobriety.[2] *See In re Parental Rights as to J.D.N.*, 128 Nev. 462, 472, 475-76, 283 P.3d 842, 849, 850-51 (2012) (concluding that the district court properly considered relevant factors in determining that the parents failed to rebut the NRS 128.109 presumptions, including that the parents made only token efforts and did not begin to engage in services to comply with the reunification plan until the termination hearing approached); *In re Parental Rights as to N.J.*, 125 Nev. 835, 843, 846, 221 P.3d 1255, 1261, 1263 (2009) (agreeing with the district court's token efforts finding where the record demonstrated that the parent had made only recent efforts to address substance abuse, and concluding that "[a] mere few

---

[2]Brandon Z. also argues that seeking treatment for substance abuse was not part of his case plan and he consequently cannot be found to have exhibited token efforts in failing to do so. We disagree, as his case plan required him to "access[ ] resources to help address his need to use illegal substances and pull[ ] from those resources."

His further argument that DFS failed to monitor his progress following his re-incarceration in October 2016, rendering the trial a mere formality and violating his due process rights, is similarly without merit. The record indicates that DFS made efforts to engage him in drug treatment services but he consistently failed to communicate with DFS. It further supports that he last used heroin in October 2016, 14 months after the child's removal and DFS independently discovered his re-incarceration in November 2016, at which time a DFS caseworker contacted him and he advised her that he had done nothing to complete his case plan. Regardless, he fails to provide cogent legal argument as to how this would constitute a violation of his due process rights. Additionally, he does not cite to any evidence in support of his bare allegation that the district court decided to terminate his rights before considering the evidence and arguments at trial. To the contrary, the court made detailed findings based on the evidence presented at trial as to each parent, individually. In the absence of any citations to evidence in the record or cogent argument, counsel should be careful not to cast aspersions on the integrity of the district court.

months of sobriety almost a year and one-half after N.J.'s birth is a token effort at best," which the parent failed to rebut). We, therefore, conclude that the district court's finding that appellants did not rebut the presumption of token efforts is supported by substantial evidence.[3] Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Cherry

_____, J.
Parraguirre

_____, J.
Stiglich

cc:    Hon. Robert Teuton, District Judge, Family Court Division
       Mills, Mills & Anderson
       Karen A. Connolly, Ltd.
       Clark County District Attorney/Juvenile Division
       Eighth District Court Clerk

_____

[3]As substantial evidence supports this ground, we do not address the additional grounds on which the district court found termination of parental rights to be appropriate. *See* NRS 128.105(1)(b) (requiring a finding of at least one ground of parental fault).